UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
ANSANO CONSTRUCTION CORP.,                      :
                                                :
                                    Plaintiff,  :
                        -against-               :               24-CV-05240 (VEC)
                                                :
                                                :               OPINION & ORDER
MT. HAWLEY INSURANCE COMPANY,                   :
                                                :
                                    Defendant.  :
-----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Ansano Construction Corp. owns premises in the Bronx that it leases to Citibank. Ansano, Citibank, and others were sued in New York state court after a person tripped in the parking lot of the leased premises. Ansano's liability insurer, Defendant Mt. Hawley Insurance Company, declined to defend Ansano in the state court action. Mt. Hawley moves for summary judgment, seeking declaratory judgment that it has no duty to defend. *See* Mt. Hawley Mot. for Summary Judgment ("Def. Mot."), Dkt. 19. Ansano opposes and cross-moves. *See* Ansano Cross-Motion for Summary Judgment ("Pl. Mot."), Dkt. 22. Mt. Hawley's motion is GRANTED, and Ansano's motion is DENIED.

## BACKGROUND

Plaintiff Ansano Construction Corp. has leased its premises in the Bronx to non-party Citibank for decades. Rule 56.1 Statement, Dkt. 32 ("56.1") ¶¶ 9–19. The lease in effect during the relevant time provides, in pertinent part:

> **2. *INDEMNIFICATION:*** Tenant hereby agrees to indemnify, defend and hold Landlord and its officers, directors, employees, representatives, agents, members, partners, shareholders and contractors (collectively, "Landlord Indemnitees" and individually, "Landlord Indemnitee") harmless from and against any and all third-party claims arising from or in connection with any act, omission (where there is

> affirmative duty to act) or negligence of Tenant or any Tenant Indemnitee (as hereinafter defined).
>
> Landlord hereby agrees to indemnify, defend and hold Tenant and its officers, director, employees, representatives, agents, members, partners, shareholders and contractors (collectively, "Tenant Indemnitees" and individually "Tenant Indemnitee") harmless from and against any and all third-party claims arising from or in connection with any act, omission (where there is affirmative duty to act) or negligence of Landlord or any Landlord Indemnitee.
>
> The respective obligations of Landlord and Tenant under this paragraph shall survive the expiration or earlier termination of the Lease.

*Id.* ¶ 20; *see also id.* ¶ 19 (version of the lease containing this language was in force during the relevant time).

In December 2022, Iris Rivera, a security guard contracted by the Citibank located at Ansano's premises, tripped and fell in Citibank's parking lot and allegedly sustained severe injuries. *Id.* ¶¶ 4, 7–8. Rivera sued Citibank, Ansano, and Ansano's CEO in New York Supreme Court (the "Rivera Action"), claiming that their negligent maintenance and control of the premises caused her to trip and fall. *Id.* ¶¶ 5, 25; *see also* Kraus Decl. Ex. A, Dkt. 19-2 (complaint and summons in the Rivera Action). Ansano asserted cross-claims against Citibank for, among other things, breaching its obligation to procure general liability coverage on Ansano's behalf. 56.1 ¶ 6; Kraus Decl. Ex. E, Dkt. 19-6 ¶¶ 25–26.

At the time of Rivera's fall, Ansano was the insured under a commercial general liability insurance policy issued by Defendant Mt. Hawley (the "Policy"). 56.1 ¶ 21. The Policy contains a "Conditions of Coverage Endorsement," which provides, in relevant part:

> We shall have no obligation to defend or indemnify any insured for any "bodily injury," "property damage," and/or "personal and advertising injury" arising directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of any kind, or work by a "contractor" unless each and every of the following conditions is satisfied:

2

1.  Certificates of insurance are obtained from the tenant prior to commencement of the lease.  Such certificates of insurance must list primary commercial general liability coverage in effect for the entirety of the tenancy.

2.  Written agreements are obtained from the tenant which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, claims, and suits arising directly or indirectly from the tenant's use or maintenance of any premises leased to the tenant by any insured, or from the tenant's operations of any kind.  Such agreements must expressly provide indemnification to the fullest extent permitted by law.  Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease.

3.  The lease agreement must also require in writing that the tenant will obtain additional insured coverage under its primary commercial general liability policy for each insured(s) against whom the claim is made.  Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease.  Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy.

4.  The tenant's primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy.

*Id.* ¶ 23.

Ansano notified Mt. Hawley of the Rivera Action, prompting Mt. Hawley to begin an investigation.  *Id.* ¶¶ 24–25.  As part of its investigation, Mt. Hawley asked Ansano to produce a certificate of insurance from Citibank evidencing a commercial liability policy issued to Citibank that was in effect on the day of Rivera's fall.  *Id.* ¶ 26; Quirk Decl., Dkt. 19-24 ¶¶ 8–10.  Ansano failed to do so, and it has since represented that Citibank was "self-insured" at the time of Rivera's accident.  56.1 ¶¶ 26–27, 43.  Mt. Hawley, therefore, disclaimed coverage to Ansano, explaining that Ansano had failed to satisfy the conditions precedent of the policy set forth in the Conditions of Coverage Endorsement.  *Id.* ¶ 28; Quirk Decl. Ex. 4, Dkt. 19-28 at 7.

Ansano sued Mt. Hawley in New York Supreme Court, claiming that Mt. Hawley had breached its duty to defend pursuant to the terms of its policy. *See* Compl., Dkt. 1-3. Mt. Hawley removed to this Court. Notice of Removal, Dkt. 1. Following discovery, Mt. Hawley moved for summary judgment on the ground that it has no duty to defend pursuant to the Policy. *See* Def. Mot. Ansano opposed and cross-moved. *See* Pl. Mot.

## DISCUSSION

### I. Legal Standard

When parties cross-move for summary judgment, the Court must consider the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted). Although the Court must construe the facts in the light most favorable to the non-moving party, *see Wandering Dago*, 879 F.3d at 30, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks and citation omitted).

### II. Mt. Hawley Has No Duty to Defend Ansano in the Rivera Action Because Ansano Failed to Satisfy the Conditions Precedent of the Policy

"[A]n insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy."

*Pine Mgmt., Inc. v. Colony Ins. Co.*, No. 23-624-CV, 2024 WL 1266244, at *2 (2d Cir. Mar. 26, 2024) (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).  Although the insurer's duty to defend is "exceedingly broad," *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37 (2010) (citations omitted), it is not unlimited.  "[A]n insurer has no duty to defend if conditions precedent are not met." *Bausch & Lomb Inc. v. Lexington Ins. Co.*, 414 F. App'x 366, 370 (2d Cir. 2011) (citing *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 272–73 (2d Cir. 1987)); *see also Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-00150, 2021 WL 4427016, at *6–*7 (S.D.N.Y. Sept. 27, 2021) (no duty to defend where conditions precedent of a materially similar policy issued by Mt. Hawley were not satisfied).

When interpreting a condition precedent — or any other provision of an insurance policy governed by New York law — the Court must "give effect to the intent of the parties as expressed in the clear language of the contract."[1]  *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002).  Ambiguities in an insurance policy are interpreted "in favor of the insured," *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010), but the Court must not "disregard the plain meaning of the policy's language . . . in order to find an ambiguity where none exists," *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (cleaned up).

### A.    None of the Conditions Precedent is Satisfied

The conditions precedent set out in the Conditions of Coverage Endorsement are unambiguous, and the evidence presented by Mt. Hawley makes clear that they have not been

---

[1]    Pursuant to a choice of law provision in the Policy, New York law governs this dispute.  *See* Quirk Decl., Ex. 19-25 at 81.

satisfied. By the terms of the Endorsement, "each and every" of the conditions must be satisfied. 56.1 ¶ 23. There is no question of fact here; none of the conditions precedent was satisfied.

As is applicable here, the first condition precedent to coverage for a personal injury action involving the leased premises required Ansano to obtain "[c]ertificates of insurance . . . from [Citibank] prior to commencement of the lease" and those certificates "must list primary commercial general liability coverage in effect for the entirety of [Citibank's] tenancy." *Id*. Mt. Hawley has presented unrefuted evidence that it was unable to find certificates of insurance for Citibank (or any other evidence that Citibank had insurance for the premises), despite its investigative efforts. *Id.* ¶ 26. Ansano, for its part, has admitted that Citibank was "self-insured," *id.* ¶ 43, and that it "fail[ed] to produce its certificate [of insurance]," Pl. Mem., Dkt. 23 at 10. Accordingly, there is no question of fact that Mt. Hawley did not obtain a certificate of insurance from Citibank, as required by the first condition precedent of the Conditions of Coverage Endorsement.

The second condition precedent required Ansano to have obtained written agreements from Citibank to "hold harmless and indemnify [Ansano] . . . for all injuries, claims, and suits arising directly or indirectly from [Citibank's] use or maintenance of any premises leased to [Citibank] by [Ansano], or from [Citibank's] operations of any kind." 56.1 ¶ 23. It further requires the lease agreement between Ansano and Citibank to "expressly provide indemnification to the fullest extent permitted by law." *Id*. The indemnification agreement in Ansano's lease with Citibank, however, provides merely that Citibank will hold Ansano harmless for claims "arising in connection with any act, omission (where there is an affirmative duty to act) or negligence of [Citibank]," Kraus Decl. Ex. U, Dkt. 19-22 ¶ 2, as opposed to

6

"indemnification to the fullest extent permitted by law," 56.1 ¶ 23.  Accordingly, the second condition precedent is also not satisfied.

The third and fourth conditions precedent both relate to Citibank's primary commercial general liability policy.  Pursuant to the third condition, the lease agreement between Ansano and Citibank had to "require in writing that [Citibank] will obtain additional insured coverage under its primary commercial general liability policy for each insured(s) against whom the claim is made."  56.1 ¶ 23.  Pursuant to the fourth condition, Citibank's insurer had to have "agree[d] to defend and indemnify every insured against whom the claim is made . . . on a primary basis."  *Id*. Neither of these has been satisfied because Ansano admits that Citibank lacks insurance — indeed, Ansano itself has alleged in the Rivera action that Citibank "breached [its] contract by failing to comply" with a obligation to "purchase and provide a general liability insurance policy naming [Ansano] and its subsidiaries as an additional insured."  Kraus Decl. Ex. E ¶ 25. Ansano's present representation that Citibank is "self-insured" is simply another way of saying that Citibank has no liability insurance carrier.  *See Self-Insurance*, *Black's Law Dictionary* (12th ed. 2024) ("A misnomer, self-insurance is not true insurance because self-insureds fully retain risk rather than transferring it to an insurer.").

Because none of the conditions precedent is satisfied, Mt. Hawley has no duty to defend Ansano.

### B.    None of Ansano's Arguments Creates a Dispute of Material Fact as to Whether the Conditions Precedent Have Been Satisfied

In lieu of presenting any evidence to create a genuine dispute of material fact, Ansano's Memorandum relies on a series of conclusory factual and legal assertions, all of which are either unfounded or irrelevant.

*First*, Ansano notes that the lease between itself and Citibank "did not mandate a certificate of insurance" and allowed Citibank to self-insure. Pl. Mem. at 10; *see also* 56.1 ¶ 15 (lease amendment showing that Citibank was permitted, pursuant to the terms of its lease with Ansano, to self-insure). That is, of course, precisely the problem: although Ansano's lease with Citibank allowed Citibank to self-insure, in order to have coverage under its policy with Mt. Hawley, Ansano was required to require its tenants, including Citibank, to have "primary general commercial liability coverage." *Id.* ¶ 23. The Policy further required that any lease between Ansano and a tenant to require "the tenant [to] obtain additional insured coverage under its primary general liability policy for each insured(s) against whom the claim is made." *Id.* By Ansano's own admission, its lease agreement with Citibank contained no such requirement; to the contrary, it affirmatively allowed Citibank to proceed without liability insurance at all.

*Second*, Ansano argues that it has substantially complied with the conditions precedent, both because Citibank is "self-insured" and because the indemnification provisions in its lease with Citibank "functionally satisfy the [Conditions of Coverage E]ndorsement's purpose." Pl. Mem. at 10. That is irrelevant. "The flexible concept of substantial compliance stands in sharp contrast to the requirement of strict compliance that protects a party that has taken the precaution of making its duty expressly conditional." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 692 (1995) (internal quotation marks omitted). The Endorsement states, in unambiguous terms, that Mt. Hawley will not provide coverage for personal injury lawsuits arising out of a tenant's use of Ansano's premises unless Ansano obtains certificates of insurance from the tenant showing that they had a primary liability insurance policy in effect prior to the start of the lease. 56.1 ¶ 23. Because no such certificate of insurance was obtained in this case, Mt. Hawley has no duty to defend Ansano in the Rivera Action.

*Third*, Ansano notes in its Memorandum that its CEO "believed Citibank maintained compliant coverage" and provided a declaration stating as much. Pl. Mem. at 10; Musano Decl., Dkt. 22-1 ¶ 14. The Court is unsure what Ansano intends to demonstrate with this assertion. By its plain terms, the Conditions of Coverage Endorsement requires Ansano to have actual evidence, not a subjective belief, that Citibank has liability insurance. 56.1 ¶ 23.

*Fourth*, Ansano argues that Mt. Hawley "has not proved that Citibank lacked coverage or that Ansano failed to request any certificate." Pl. Mem. at 10. This is absurd. As an initial matter, Ansano itself has asserted, and Mt. Hawley does not dispute, that Citibank was "self-insured." 56.1 ¶ 43. Ansano has effectively conceded, therefore, that Citibank did not have a commercial liability insurance policy at the time of Rivera's fall, and that it had not obtained certificates of insurance from Citibank prior to the start of the lease.

Even if Ansano had not offered that concession, its hand-waving would still be insufficient to create a genuine dispute of material fact. In a sworn declaration submitted by Mt. Hawley, the employee who conducted the investigation into Ansano's claim stated that Ansano failed to provide "a certificate of insurance evidencing a commercial general liability policy issued to Citibank" when asked, and that Mt. Hawley has not otherwise been able to locate one. 56.1 ¶ 26; Quirk Decl. ¶¶ 8–10. Ansano provides no evidence whatsoever that it does, in fact, have the requisite certificates from Citibank; instead, it avers that it is unable to determine whether the certificates exist because discovery in the Rivera Action is incomplete. 56.1 ¶ 26. The notion that discovery would be needed in order for Ansano to show that it obtained the necessary certificates of insurance — a fact entirely within the realm of Ansano's own knowledge — is simply nonsensical.

*Fifth*, Ansano argues that the Conditions of Coverage Endorsement "does not specify that [Citibank] must name Ansano as an additional insured" in its insurance policy. Pl. Mem. at 10. This is accurate only in the most formalistic sense, and is, in all events, irrelevant. True, the Endorsement does not state explicitly that "Citibank" must have an insurance policy that names "Ansano" as an additional insured. It does, however, provide that any lease between Ansano and a tenant must "require in writing that the tenant will obtain additional insured coverage under its primary commercial general liability policy for each insured(s) against whom the claim is made." 56.1 ¶ 23. Mt. Hawley cited Ansano's failure to include "the required language" in its lease with Citibank as one of the reasons it declined to defend Ansano in the Rivera Action. Quirk Decl. Ex. 4 at 7. Ansano concedes that far from requiring Citibank to have a primary commercial liability policy for Ansano, its lease expressly permitted Citibank to self-insure. 56.1 ¶ 15.

*Sixth*, Ansano argues that its failure to satisfy the conditions precedent should be excused because Mt. Hawley suffered no prejudice as a result of its non-compliance. That is irrelevant. An insured's failure to comply with a condition precedent "vitiates the contract" as a matter of law, and the insurer "need not show prejudice before disclaiming based on the insured's failure" to comply. *Great Canal Realty Corp. v. Seneca Ins. Co.*, 5 N.Y.3d 742, 743 (2005).[2]

Accordingly, there is no dispute of fact that Ansano failed to satisfy the conditions precedent of the Policy.

---

[2]    The sole case Ansano cites for the contrary proposition, *Continental Casualty Co. v. Stronghold Insurance Co.*, 77 F.3d 16 (2d Cir. 1996), is wholly unsupportive. That case discusses prejudice in the context of reinsurance, noting that, when the beneficiary of a reinsurance policy fails to give prompt notice of an incident likely to involve reinsurance, the reinsurer must "show prejudice" in order to "escape liability" on the basis of late notice. *Id.* at 20. The court specifically contrasted that fact pattern from ones involving "ordinary insurance," and ones where the policy provision with which the insured failed to comply was "an express condition precedent." *Id.*

10

### III.    Rivera's Alleged Injury Arose from Citibank's Use of the Leased Premises

Ansano's sole remaining argument is that, even if it has not satisfied the conditions

precedent, the Conditions of Coverage Endorsement is inapplicable because Rivera's injury did

not "aris[e] directly or indirectly from [Citibank's] occupation, use or maintenance" of Ansano's

premises.  56.1 ¶ 46.  This is legally incorrect.   In the insurance context, "[t]he phrase 'arising

out of' has been interpreted . . . to mean originating from, incident to, or having connection with,

and requires only that there be some causal relationship between the injury and the risk for which

coverage is provided."  *Worth Const. Co. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 415 (2008)

(cleaned up).  Rivera's fall easily satisfies that standard:  it is undisputed that Rivera's fall

occurred while she was providing security for Citibank at the premises owned by Ansano.  56.1

¶ 8.  She alleges in an affidavit filed in connection with her state court action that the fall

occurred in the "CITIBANK parking lot" as she "exit[ed] the bank door . . . to proceed to a

'Brosnan Security' vehicle."  Kraus Decl. Ex. W, Dkt. 30-1 ¶¶ 3, 5.  Courts confronted with

similar policy language and similar facts have consistently found that connections like these

between a lessee and an alleged injury are sufficient to satisfy the "arising out of" standard.  *See,*

*e.g.*, *Mt. Hawley Ins. Co. v. Buckeye Real Est. Invs. LLC*, No. 23-CV-2342 (LJL), 2024 WL

323334, at *1, *8 (S.D.N.Y. Jan. 29, 2024), *vacated on other grounds*, No. 23-CV-2342 (LJL),

2024 WL 3523051 (S.D.N.Y. July 23, 2024) (injuries of a person who "tripped and fell on a high

curb in front of" the leased premises arose directly or indirectly from the "tenant's use or

maintenance of [the] premises"); *523 BWAY, LLC v. Erie & Niagara Ins. Ass'n*, 236 A.D.3d 841,

844 (2d Dep't 2025) (injury that occurred in a lessee's parking lot arose out of the lessee's use of

the premises "even though the parking lot was not expressly included as part of the subject

property" because the injured person "had at least a license to use the parking lot, since [she]

testified in the underlying action that she parked in the parking lot when she came to work").

**CONCLUSION**

For the foregoing reasons, Mt. Hawley's motion for summary judgment is GRANTED, and Ansano's cross-motion is DENIED.  The Clerk of the Court is respectfully directed to enter judgment consistent with this Opinion, to terminate any open motions, and to CLOSE the case.

**SO ORDERED.**

**Date:   December 3, 2025**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**